IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAII

| | | |
|---|---|---|
| JOHN PARRIS, | ) | CIV. NO. 11-00258 SOM/BMK |
| | ) | |
| Plaintiff, | ) | ORDER GRANTING IN PART AND |
| | ) | DENYING IN PART DEFENDANT'S |
| vs. | ) | MOTION FOR JUDGMENT ON THE |
| | ) | PLEADINGS, OR, IN THE |
| WYNDHAM VACATIONS RESORTS, | ) | ALTERNATIVE, SUMMARY JUDGMENT |
| INC., | ) | (ECF NO. 93) |
| | ) | |
| Defendants. | ) | |
| _____ | ) | |

ORDER GRANTING IN PART AND DENYING IN
PART DEFENDANT'S MOTION FOR JUDGMENT ON THE PLEADINGS
OR, IN THE ALTERNATIVE, FOR SUMMARY JUDGMENT (ECF NO. 87)

I.      INTRODUCTION.

        In this employment discrimination case, Plaintiff John

Parris sues Defendant Wyndham Vacation Resorts, Inc.,[1] alleging

that he has been demoted and harassed in the workplace as a

result of his age.  Wyndham moves for judgment on the pleadings

or, in the alternative, summary judgment, on all claims asserted

in the Complaint.  Because Wyndham's motion asks the court to

assess evidence, the court treats it as a motion for summary

judgment.

        In his memorandum in opposition to Wyndham's motion,

Parris offers to voluntarily dismiss Counts I (Title VII) and IV

(Intentional Infliction of Emotional Distress).  See Plaintiff's

_____

        [1] The Complaint originally included other Wyndham entities
as Defendants, but they were dismissed by stipulation.  See ECF
No. 16.

Memorandum in Opposition to Defendant's Motion for Summary Judgment at 6, 24, ECF 105.   Parris also expressly states in his memorandum that he is not making a retaliation claim in this case.   Id. at 20.

The remaining claims before the court on the present motion are for violations of the Age Discrimination in Employment Act, 29 U.S.C. § 623, and Haw. Rev. Stat. § 378-2. (Counts II and III, respectively).   Under these statutes, Parris advances both disparate treatment and hostile work environment claims based on age discrimination.   The court grants Wyndham's motion in part and denies it in part.   Summary judgment is denied with respect to Parris's disparate treatment claims under federal and state law, but granted in favor of Wyndham on his hostile work environment claims.

II.        **FACTUAL BACKGROUND.**

From October 2005 to March 2009, John Parris was employed by Wyndham Vacation Resorts, a for-profit company that sells vacation timeshares.   See Declaration of John Parris ¶¶ 7-11, Sept. 10, 2013, ECF No. 106-4.   Parris's job was to give presentations, known in the industry as "tours," about Wyndham properties to individuals who agreed to attend in exchange for free gifts.   See Declaration of Jonathan O'Neil, June 26th, 2013, ECF No. 94-1. Parris first worked as a "front-line" sales representative and then as a "front-line" sales manager and senior sales manager in the

company's Waikiki branch.  Id.  The role of the front-line division is to sell Wyndham timeshare interests to new customers; by contrast, the "in-house" division sells to individuals who already own Wyndham interests.  See Declaration of Michael Turolla ¶ 3, June 24, 2013, ECF No. 94-2.  At Wyndham, underperforming sales managers are often terminated, and there is high turnover.  O'Neil Decl. ¶ 6.

In April 2007, Parris was promoted to sales manager and, in September 2008, to the newly created position of senior sales manager of the front-line division.  Parris Decl. ¶¶ 8, 11.  In early September, just before Parris's promotion, Charles Barker was named Vice President of Sales and Marketing in Oahu.  In this role, Barker was responsible for overseeing both front-line and in-house operations, and was Parris's immediate supervisor.  Turolla Decl. ¶ 8.  Barker reported to Mark Pollard, who was the Area Vice President and "responsible for oversight of Kona, Oahu, Maui and Waikiki."  Pollard reported to Michael Turolla, who was Wyndham's Senior Vice President for Sales and Marketing for all of Hawaii.  Id. ¶ 3.  According to Turolla, Barker "approved the appointment of Parris . . . as [a] Senior Sales Manager under him."  Id. ¶ 8.

Sales representatives and managers at Wyndham are assessed on their "Average Volume Per Guest," or APG.  APG is derived by dividing an agent's net sales revenue by the number of sales "tours" assigned to the agent in a given period.  O'Neil

Decl. ¶ 6.  Having an APG below a certain level can cause an employee to be placed on "specific performance," which is a probationary period during which an employee is supposed to increase his or her APG or face possible demotion or termination. Id. ¶ 7.

Soon after Barker's arrival, Pollard "strongly suggested" to him that Parris be placed on specific performance because of his low APG.  Turolla Decl. ¶ 8; see also Email from Mark Pollard to Charles Barker, October 02, 2008, ECF No. 94-8.  On October 2, 2008, Parris was placed on specific performance.  ECF No. 94-8. Nevertheless, Parris finished 2008 as the front-line manager with the eighth highest APG in the entire company for the calender year. See Top 25 Sales Managers by APG 2008, ECF No. 106-28.  This meant Parris was ranked third among the four Waikiki front-line managers. Id.  In 2007, Parris had finished first overall in the company on this measure.  See Top 25 Sales Managers by APG 2007, ECF No. 106-7.

On January 8, 2009, Parris was called into the office to speak with Barker and the Regional Director of Human Resources, Andrea Ward.  Parris Decl. ¶ 50.  At the meeting, Parris was accused of "having many complaints against him" and "giving away free incentives," though, according to Parris, neither Barker nor Ward was able to substantiate these claims.  Id.  The following

4

day, Parris was demoted to sales manager.  Id. ¶ 51; see also Email from Charles Barker, January 08, 2009, ECF. No. 94-9.

A few days later, Parris sent an email to Barker, complaining that his name had been put on contracts for transactions that he had no involvement with.  Id. ¶ 52.  On January 12, 2009, Barker called Parris into his office, allegedly "berated [him] for having sent the email," and stated that Parris and an older colleague, Jose Henao, were "lucky to have [their] jobs at [their] age because Ms. Ward wanted to fire both of [them]."  Id. ¶ 54.

Later that week, on January 17, 2009, Barker allegedly again "berated" Parris, this time for the low sales numbers Parris's team had attained that day.  Id. ¶ 56.  As a result of their confrontation, Parris says he was "suspended [] on the spot for one week and then informed [] that [Barker's] name [would be] on all of [Parris's] team's deals during [his] absence."  Id. Barker also sent Turolla and other senior management an email detailing the incident and describing Parris's demeanor as "extremely negative."  See Email from Charles Barker to Michael Turolla, Andrea Ward, and John Gonsalves, January 17, 2009, ECF 94-9.  Parris responded by sending an email to the Executive Vice President of Human Resources, Kent Keoppel, disputing Barker's decision, and describing Barker's behavior during their conversation as "bizarre,"  See Email from John Parris to Kent

Keoppel, January 17, 2009, ECF No. 106-31.  Parris was eventually given credit for the sales his team achieved in his absence. Complaint ¶ 48, ECF 94-5.

On February 24, 2009, Parris was once again placed on specific performance for his low APG.  His team's APG for the prior month had been $1211.  See Sales Efficiency Report 01/23/09-02/23/09, ECF No. 106-39.  This placed Parris fifth among the seven front-line and in-house managers working during that month.  Id. Parris was told his team had to exceed an APG of $1847 for the following month.  See Notification of probation period for John Parris, ECF No. 106-34.  Parris suggests that this was higher than the usual "frontline salesperson's goal."  Parris Decl. ¶ 63.[2] While on specific performance, Parris failed to meet his required target; in fact, his APG fell to $652, a little more than a third of his target.  See Sales Efficiency Report 02/24/09-03/24/09, ECF No. 106-40.  Parris alleges that he was told, on March 26, 2009, that he would have to return to being a "sales representative," the position he had held prior to September 2007, or face being terminated.  Parris Decl. ¶ 86.  Parris "chose demotion."  Id.

Parris initially "understood the decision since . . . [he] hadn't achieved the required team APG." See Email from John

---

[2] Parris only introduces evidence of APG expectations for sales representatives, not sales managers. See, e.g., Email From Charles Barker to "Frontline Department," January 10, 2009, ECF 106-37.

Parris to Andrea Ward, March 28, 2009, ECF. No. 94-19.  But when Parris looked into the matter further, he discovered that Aly Hirani, a front-line manager below the age of 40, had not been demoted despite failing to achieve "the required APGs to remain a front-line manager."  Id.  As a result, Parris sent an email to Andrea Ward, noting that there appeared to be a "two tiered system in effect" and that the demotion decision must have been based on age, because it was the "only other significant factor that separate[d Parris and Hirani]."  Id.

Wyndham's sales documents indicate that Hirani was ranked below Parris during most of 2008 and through the beginning of January 2009, despite Hirani's work for much of that time as an in-house representative, which typically results in higher APG numbers.  See Term Report 1/1/08 - 12/7/08, ECF No. 106-25; Sales Efficiency Report 10/04/08-01/09, ECF No. 106-26; Deposition of Charles Barker 20-21, April 12, 2013, ECF No. 106-6.  However, Hirani did outperform Parris in February and March of 2009.  See Sales Efficiency Report 01/13/09-02/23/09, ECF No. 106-39; Sales Efficiency Report 02/24/09-03/24/03, ECF No. 106-40.  Hirani's APG in March, $1357, was more than double Parris's, though still below the APG target that Wyndham had set for Parris while he was on specific performance.  Id.  Wyndham contends that Hirani was in fact working in a special "hybrid" team, which sold to both front-line and in-house customers, until February 2009, and therefore did

not have a sufficient track record to be placed on specific performance during the relevant period.  O'Neil Decl. ¶ 11.

Several employees other than Parris claim that Barker made age-based slurs to them while serving as Vice President of Sales and Marketing on Oahu.  Former front-line manager Jose Henao claims that Barker said to him and Parris: "Here they are, all the old bags"; "I'm going to get rid of all you old clunkers"; and "I am going to replace you with younger and more efficient managers." Declaration of Jose Henao ¶ 19-21, June 19, 2013, ECF 106-2.

Art Brown, who claims to have worked in 2008 as a Quality Control Agent in the front-line department under Barker, states in his declaration that he "heard [Barker] say that Wyndham needed to get rid of older workers, including managers like [Brown], who he considered 'fossils' because of [their] age."  Declaration of Arthur Brown ¶ 6, August 20, 2013, ECF 106-3.  Brown further states that he heard Barker say, "We need to get rid of all these old clunkers"; that working with an older manager is "like dealing with a fossil"; and that "he wanted to get rid of [Brown] because [he] was a 'dinosaur' [and] an 'old bag' who did not deserve any promotions."  Id. ¶ 6-10.  Brown claims that Barker made "countless comments" of this nature to him and other older employees at Wyndham.  Id. ¶ 12.

The declaration of Ofer Ahuvia, who worked under Barker in the in-house division, states that Barker "would promote younger

sales representatives to management positions even though they were not qualified . . . [and] on probation for low sales"; that "Barker said things to the effect of 'we need to get rid of the oldies and bring in younger people'"; and that he generally "treated younger people differently to older people at Wyndham." Declaration of Ofer Ahuvia ¶¶ 8-10, September 9, 2013, No. ECF 106-1.

In addition to pointing to comments by Barker, Parris alleges that Turolla frequently called him an "old timer" and once wrote an email encouraging a younger manager, Lauren Burney, to "show the old timers how it's done." Parris Decl. ¶¶ 301-31.

III.     SUMMARY JUDGMENT STANDARD.

Summary judgment shall be granted when "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). See Addisu v. Fred Meyer, Inc., 198 F.3d 1130, 1134 (9th Cir. 2000). The movants must support their position that a material fact is or is not genuinely disputed by either "citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for the purposes of the motion only), admissions, interrogatory answers, or other materials"; or "showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact."

Fed. R. Civ. P. 56(c).  One of the principal purposes of summary judgment is to identify and dispose of factually unsupported claims and defenses.  Celotex Corp. v. Catrett, 477 U.S. 317, 323-24 (1986).

Summary judgment must be granted against a party that fails to demonstrate facts to establish what will be an essential element at trial.  See id. at 323.  The burden initially falls on the moving party to identify for the court those "portions of the materials on file that it believes demonstrate the absence of any genuine issue of material fact."  T.W. Elec. Serv., Inc. v. Pac. Elec. Contractors Ass'n, 809 F.2d 626, 630 (9th Cir. 1987) (citing Celotex Corp., 477 U.S. at 323).  "When the moving party has carried its burden under Rule 56(c), its opponent must do more than simply show that there is some metaphysical doubt as to the material facts."  Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986) (footnote omitted).

The nonmoving party may not rely on the mere allegations in the pleadings and instead must set forth specific facts showing that there is a genuine issue for trial.  T.W. Elec. Serv., 809 F.2d at 630.  At least some "'significant probative evidence tending to support the complaint'" must be produced.  Id. (quoting First Nat'l Bank of Ariz. v. Cities Serv. Co., 391 U.S. 253, 290 (1968)); see also Addisu, 198 F.3d at 1134 ("A scintilla of evidence or evidence that is merely colorable or not significantly

probative does not present a genuine issue of material fact."). "[I]f the factual context makes the non-moving party's claim implausible, that party must come forward with more persuasive evidence than would otherwise be necessary to show that there is a genuine issue for trial." Cal. Arch'l Bldg. Prods., Inc. v. Franciscan Ceramics, Inc., 818 F.2d 1466, 1468 (9th Cir. 1987) (citing Matsushita Elec. Indus. Co., 475 U.S. at 587). Accord Addisu, 198 F.3d at 1134 ("There must be enough doubt for a 'reasonable trier of fact' to find for plaintiffs in order to defeat the summary judgment motion.").

In adjudicating summary judgment motions, the court must view all evidence and inferences in the light most favorable to the nonmoving party. T.W. Elec. Serv., 809 F.2d at 631.  Inferences may be drawn from underlying facts not in dispute, as well as from disputed facts that the judge is required to resolve in favor of the nonmoving party.  Id.  When "direct evidence" produced by the moving party conflicts with "direct evidence" produced by the party opposing summary judgment, "the judge must assume the truth of the evidence set forth by the nonmoving party with respect to that fact."  Id.

## IV.      ANALYSIS.

Having abandoned his claims alleging a violation of Title VII (Count I) and Intentional Infliction of Emotional Distress (Count IV), Parris is proceeding with claims for disparate

treatment and hostile work environment in violation of the Age Discrimination in Employment Act and the age discrimination provision in section 378-2 of Hawaii Revised Statutes (Counts II and III). Wyndham moves for summary judgment on these claims.

### A.    Disparate Treatment Claims.

The federal Age Discrimination in Employment Act and Hawaii law both prohibit discrimination based on age.  29 U.S.C. § 623(a)(1) ("It shall be unlawful for an employer to . . . discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's age"); Haw. Rev. Stat. § 378-2. ("It shall be an unlawful discriminatory practice [b]ecause of . . . age . . . [f]or any employer to refuse to hire or employ or to bar or discharge from employment, or otherwise to discriminate against any individual in compensation or in the terms, conditions, or privileges of employment").

Under both federal and state law, "when responding to a summary judgment motion, the plaintiff is presented with a choice regarding how to establish his or her case." McGinest v. GTE Serv. Corp., 360 F.3d 1103, 1122 (9th Cir. 2004); see also Shoppe v. Gucci Am., Inc., 94 Haw. 368, 378, 14 P.3d 1049, 1059 (2000) (applying federal standard to claims under section 378-2).

First, the plaintiff may apply the burden-shifting analysis set forth in McDonnell Douglas Corp. v. Green, 411 U.S.

792 (1973).  Under the McDonnell Douglas framework, a plaintiff must establish a prima facie case of discrimination by showing that (1) he belongs to a protected class; (2) he was qualified for the position; (3) he suffered an adverse employment action; and (4) similarly situated individuals outside of his protected class were treated more favorably.  See Nicholson v. Hyannis Air Serv., Inc., 580 F.3d 1116 (9th Cir. 2009).  Once a plaintiff succeeds in presenting a prima facie case, "the burden of production, but not persuasion, then shifts to the employer to articulate some legitimate, nondiscriminatory reason for the challenged action." Chuang v. Univ. of California Davis, Bd. of Trustees, 225 F.3d 1115, 1123-24 (9th Cir. 2000).  "If defendant meets this burden, plaintiffs must then raise a triable issue of material fact as to whether the defendant's proffered reasons for their terminations are mere pretext for unlawful discrimination."  Hawn v. Executive Jet Mgmt., Inc., 615 F.3d 1151, 1155 (9th Cir. 2010).  The plaintiff can prove pretext "(1) indirectly, by showing that the employer's proffered explanation is 'unworthy of credence' because it is internally inconsistent or otherwise not believable, or (2) directly, by showing that unlawful discrimination more likely motivated the employer.  All of the evidence—whether direct or indirect—is to be considered cumulatively."  Shelley v. Green, 666 F.3d 599, 609 (9th Cir. 2012)(internal quotation omitted).

13

Alternatively, a member of a protected class suffering an adverse employment action may rely solely on "direct evidence." "Direct evidence, in the context of an ADEA claim, is defined as evidence of conduct or statements by persons involved in the decision-making process that may be viewed as directly reflecting the alleged discriminatory attitude . . . sufficient to permit the *fact finder* to infer that that attitude was more likely than not [the cause of] the employer's decision."  Enlow v. Salem-Keizer Yellow Cab Co., Inc., 389 F.3d 802, 812 (9th Cir. 2004) (citation omitted) (emphasis in original).  Direct evidence often takes the form of slurs made by the employer against members of the protected category.  See, e.g., Earl v. Nielsen Media Research, Inc., 658 F.3d 1108, 1113 (9th Cir. 2011) (noting that "comments from supervisors betraying bias or animus against older workers" constitute direct evidence of age discrimination); Mustafa v. Clark Cnty. Sch. Dist., 157 F.3d 1169, 1180 (9th Cir. 1998) ("Discriminatory remarks are relevant evidence that, along with other evidence, can create a strong inference of intentional discrimination.").

Whichever theory plaintiffs proceed under, at trial "they retain[] the burden of persuasion to establish that age was the 'but-for' cause of the employer's adverse action."  Gross v. FBL Fin. Servs., Inc., 557 U.S. 167, 180 (2009). In other words, a plaintiff must do more than "produce some evidence that age was one

14

motivating factor in [an employment] decision," id.; a plaintiff must show, at the summary judgment stage, that a reasonable trier of fact could conclude, by a preponderance of the evidence, that the plaintiff would not have been fired but for impermissible age discrimination. See, e.g., Scheitlin v. Freescale Semiconductor, Inc., 465 F. App'x 698, 699 (9th Cir. 2012) (applying Gross's "but for" causation standard at the summary judgment stage).

### 1.   Adverse Employment Action

Even when relying on direct evidence, a plaintiff must, of course, show that he or she is a protected individual who has been subjected to an adverse employment action. See, e.g., Novak v. England, 316 F. App'x 671, 673 (9th Cir. 2009) (discussing whether there was an adverse employment action in a case in which direct evidence of discrimination was proffered).

Wyndham argues that Parris does not make the threshold showing that he suffered an adverse employment action, because his demotion was wholly voluntary.  Wyndham asks this court to glean the alleged voluntariness from two statements made by Parris (one during his deposition and the other in a form submitted to the Hawaii Civil Rights Commission) in which he said that he "agreed to step down as manager."  See Memorandum in Support of Motion for Summary Judgment at 13-14, ECF No. 93-1.  Parris argues that he only "agreed" to step down because the alternative was being fired. See Memo in Opp. at 13, ECF No. 105-2.  Parris's statements are

susceptible to both meanings, and Wyndham's reliance on Parris's own ambiguous testimony is unpersuasive absent any reason Parris would have voluntarily stepped down if given a meaningful choice. Further, Parris's email to management of March, 28, 2009, notes that he was "*told* he was going back to [front-line] sales", suggesting an absence of voluntariness. Email from John Parris to Andrea Ward, March 28, 2009, ECF No. 94-19 (emphasis added).  There is sufficient evidence, therefore, from which a fact-finder could conclude that Parris's demotion was not voluntary.

## 2.   Direct Evidence of Discrimination

Once a plaintiff has demonstrated that he or she has suffered an adverse employment decision, the plaintiff may survive summary judgment solely by providing sufficient direct evidence of discriminatory animus from which a fact-finder could reasonably infer that an improper motive caused the employer's decision.  See Swierkiewicz v. Sorema N. A., 534 U.S. 506, 511 (2002)("[I]f a plaintiff is able to produce direct evidence of discrimination, he may prevail without proving all the elements of a prima facie case."); Trans World Airlines, Inc. v. Thurston, 469 U.S. 111, 121 (1985) ("[T]he McDonnell Douglas test is inapplicable where the plaintiff presents direct evidence of discrimination."); Adam v. Kempthorne, 292 F. App'x 646, 650 (9th Cir. 2008) ("When a plaintiff presents direct evidence in support of an ADEA claim, the McDonnell Douglas analysis is unnecessary because the direct

evidence allows the plaintiff to proceed directly to the question of whether the employer intentionally discriminated because of the plaintiff's age."); Enlow v. Salem-Keizer Yellow Cab Co., Inc., 389 F.3d 802, 812 (9th Cir. 2004) ("When a plaintiff alleges disparate treatment based on direct evidence in an ADEA claim, we do not apply the burden-shifting analysis set forth in McDonnell Douglas Corp."). Because Parris provides direct evidence of discrimination, this court does not apply the McDonnell-Douglas framework.

In the Ninth Circuit, "[w]hen the evidence is direct, we require very little evidence to survive summary judgment in a discrimination case." EEOC v. Boeing Co., 577 F.3d 1044, 1049 (9th Cir. 2009) (internal citation omitted). The Ninth Circuit "has 'repeatedly held that a single discriminatory comment by a plaintiff's supervisor or decisionmaker is sufficient to preclude summary judgment for the employer.'" Nguyen v. Qualcomm, Inc., 501 F. App'x 691, 693-94 (9th Cir. 2012) (quoting Dominguez-Curry v. Nev. Transp. Dep't, 424 F.3d 1027, 1039 (9th Cir. 2005)). See also Schechner v. KPIX-TV, 686 F.3d 1018, 1022 (9th Cir. 2012) ("As a general matter, the plaintiff in an employment discrimination action need produce very little evidence in order to overcome an employer's motion for summary judgment."); Lalau v. City & Cnty. of Honolulu, CIV. 11-268, 2013 WL 1337000 (D. Haw. Mar. 28, 2013)

17

(even "slight evidence is sufficient to defeat [a] summary judgment motion" in an employment discrimination case).

As discussed earlier, Barker allegedly made numerous comments to several employees, including Parris, regarding their age.  Among other things, Barker allegedly stated directly to Parris that he "was lucky to have [his] job at [his] age," and told other older employees that he was going to "replace them with younger, more efficient managers" and that "we need to get rid of the oldies and bring in younger people."  These statements are probative as to Barker's motive for demoting Parris, even if some of them were made to employees other than Parris.  Metoyer v. Chassman, 504 F.3d 919, 937 (9th Cir. 2007) ("[B]igoted remarks by a member of senior management may tend to show discrimination, even if directed at someone other than the plaintiff.").  Discriminatory remarks that, like Barker's, "regard[] assignments, promotions, or policies ... create[ ] a strong inference of intentional discrimination."  Mangold v. California Pub. Utils. Comm'n, 67 F.3d 1470, 1477 (9th Cir. 1995).

The alleged comments are neither "very general [nor unrelated] to the termination [of the employee]."  Nesbit v. PepsiCo, Inc., 994 F.2d 703, 705 (9th Cir. 1993).  Instead, if Barker uttered the alleged words, they reveal a belief that older employees are inferior to younger ones by mere dint of their age, and demonstrate Barker's apparent intent to make employment

18

decisions based on this belief.  The Supreme Court has held that telling an employee he "was so old [he] must have come over on the Mayflower" and "was too damn old to do [his] job" is highly probative evidence of age discrimination.  Reeves v. Sanderson Plumbing Products, Inc., 530 U.S. 133, 151 (2000).  Similarly, the Ninth Circuit has found that remarks by an employer that the employer "wanted somebody younger for the job" are sufficient to preclude summary judgment on an age discrimination claim. Schnidrig v. Columbia Mach., Inc., 80 F.3d 1406, 1410-11 (9th Cir. 1996).  Such remarks are similar to those alleged in this case. Thus, Barker's alleged statements, purportedly made frequently and to at least four employees, would, if proven, be sufficient for a fact-finder to reasonably conclude that Barker had an age-based animus.

Whether the alleged animus was the "but for" cause of Parris's demotion is a question this court leaves for trial.  While Parris admits that he did not meet the APG required while he was on specific performance, he appears to have decided that his demotion was unreasonable after realizing that Hirani had not been demoted or placed on specific performance.  See Email from John Parris to Andrea Ward, March 28, 2009, ECF No. 94-19.  Parris argues that his APG requirements were unexplainably high, and that even the ninth-highest-selling employee in the company would have been put on specific performance under such a standard.  Memo in Opp. at 9, ECF

19

No. 105-2.  Parris also points to his medium-term and long-term past performance as evidence of his job competence, suggesting that incompetence may not have caused his demotion.  Id. at 7; See, e.g., EEOC v. Boeing Co., 577 F.3d 1044, 1050 (9th Cir. 2009)(finding evidence of longer-term past performance to be probative, despite acknowledged recent poor performance).  Parris further contends that Wyndham's exacting standards were not equally applied, and that younger employees were not punished for equivalent or worse performance.  Memo in Opp. at 9, ECF No. 105-2.

While Wyndham's sales numbers appear to fluctuate greatly from week to week, the evidence, such as the sales reports, read in the light most favorable to Parris, supports the possibility that Hirani and Parris were similarly performing employees who were treated differently by their employer.[3]  While it is of course possible that Hirani's better treatment was for reasons wholly unrelated to age, the evidence of differential standards, combined with Barker's allegedly discriminatory statements, create a

---

[3] Wyndham's primary response to this argument is that Hirani was part of a "hybrid team," which sold to both front-line and in-house customers.  However, the sales figures clearly indicate that in-house sales were often *greater* than front-line sales, so that a "hybrid" team might be expected to have had more, not fewer, sales than someone making only front-line sales. See Term Report 1/1/08 - 12/7/08, ECF No. 106-25; Sales Efficiency Report 10/04/08-01/09, ECF No. 106-26; Deposition of Charles Barker 20-21, April 12, 2013, ECF No. 106-6.  At most, the issue of whether Hirani's different role in the company accounts for the different performance standard raises a question of fact that cannot be resolved at the summary judgment stage.

question of fact as to whether age-based animus was the "but for" cause of Parris' demotion.  Aragon v. Republic Silver State Disposal Inc., 292 F.3d 654, 660 (9th Cir. 2002) (noting the "minimal showing necessary to establish co-workers were similarly situated" at the summary judgment stage).

Wyndham argues that the allegedly discriminatory statements are insufficient in light of the Supreme Court's recent decisions in Gross and University of Texas Southwestern Medical Center v. Nassar, 133 S. Ct. 2517 (2013).  Wyndham sees those cases as having fundamentally altered the degree of proof a plaintiff must provide at the summary judgment stage.  But the Ninth Circuit has explicitly stated that, "Because Gross involved a case that had already progressed to trial, it did not address the evidentiary framework applicable to a motion for summary judgment."  Shelley v. Green, 666 F.3d 599, 607 (9th Cir. 2012).  Nasser does no more than apply Gross to Title VII retaliation claims, and nothing in that opinion purports to go beyond Gross or to increase the evidence required to defeat summary judgment.

Of course, Gross does alter one element of the underlying violation in an ADEA case: a plaintiff must show that age discrimination was the "but for" cause of the adverse employment decision, not just "one motivating factor" in that decision.  Gross, 557 U.S. at 180.  Even if that showing may be more difficult for a particular plaintiff to make, the "but for" requirement does

not change the obligation that a party moving for summary judgment has of showing the absence of a genuine issue of material fact. The Ninth Circuit has consistently "emphasized the importance of zealously guarding an employee's right to a full trial, since discrimination claims are frequently difficult to prove without a full airing of the evidence and an opportunity to evaluate the credibility of the witnesses." McGinest, 360 F.3d at 1112. The increased difficulty of proving an element of an ADEA violation at trial does not diminish an employee's right to that trial, or allow a grant of summary judgment in the face of triable factual issues. Indeed, knowing that Gross increases a plaintiff's burden at trial, this court must take pains not to "too readily grant summary judgment [and thereby] provid[e] a protective shield for discriminatory behavior []." McGinest, 360 F.3d at 1112.

In arguing that Gross "raise[d] the bar for a plaintiff to defeat summary judgment in ADEA cases" and that, following Nassar, Ninth Circuit cases stating "that 'very little evidence' of bias is required to defeat summary judgment[] no longer control this motion," Wyndham misapprehends the applicability of those authorities to the present case. See Wyndham's Reply Memorandum at 6-7, ECF No. 108. Even putting aside the trial context of Gross and the retaliation context of Nassar, neither of which is in issue on the present motion, this court finds nothing in either case that raises the quantum of evidence required to defeat summary judgment.

22

Just as Gross cannot be read as increasing an ADEA plaintiff's burden at trial from a preponderance of the evidence to clear and convincing evidence, Gross cannot be read as increasing an ADEA plaintiff's burden at the summary judgment stage from "very little evidence" to some greater amount of evidence establishing a triable issue.  This court is not, of course, reading Wyndham's papers as suggesting that Gross increased the evidentiary standard at trial to clear and convincing evidence.  Clearly, Gross did not do that.  Gross, 577 U.S. at 178 n.4 ("There is no heightened evidentiary requirement for ADEA plaintiffs to satisfy their burden of persuasion that age was the 'but-for' cause of their employer's adverse action.").  Rather, the court is reading Wyndham as saying that, while leaving the trial standard untouched, Gross somehow implemented an analogous increase in the amount of evidence needed to defeat summary judgment, a context not even before the Supreme Court as it decided Gross.  This makes no sense.  Gross does not disturb the existing rule in the Ninth Circuit that "very little evidence [is required] to survive summary judgment in a discrimination case."  EEOC, 577 F.3d at 1049.

The combination of Barker's alleged statements of animus and Hirani's allegedly better treatment constitute sufficient evidence to meet the minimal burden required to defeat summary judgment: there is at least a question of fact as to whether age-based discrimination was the "but for" cause of Parris's demotion.

23

### 3.  Same Actor Inference

When "the same actor is responsible for both the hiring and the firing of a discrimination plaintiff, and both actions occur within a short period of time, a strong inference arises that there was no discriminatory action." Coghlan v. Am. Seafoods Co. LLC., 413 F.3d 1090, 1096 (9th Cir. 2005)(quoting Bradley v. Harcourt, Brace & Co., 104 F.3d 267 (9th Cir. 1996)).  Wyndham alleges that the same actors were responsible for both Parris's promotion and demotion, and that Parris must therefore make "an extraordinarily strong showing of discrimination" to defeat the "same-actor" inference.  Id. at 1097.

However, whether the same actors were responsible for Parris's promotion and demotion is in dispute.  Wyndham relies primarily on Parris's Complaint in asserting that Barker was responsible for both decisions.[4]  See, e.g., Reply Memorandum 7, ECF No. 108.  But the Complaint is ambiguous on this point.  It states in one paragraph that Parris was promoted by Michael Turolla and in another that he was "appointed" by Barker.  Complaint ¶ 22,

---

[4] At the hearing on the motion for summary judgment, Wyndham relied also on a part of Barker's deposition introduced as evidence by Parris and not mentioned in either Wyndham's initial motion or its reply.  The deposition testimony is also ambiguous. Barker testifies only that he "thought it would make sense to make John Parris the senior manager of the Frontline [].". Deposition of Charles Barker, April 8, 2013, ECF No. 106-6. Whether or not Barker "thought it would make sense" for Parris to be promoted does not conclusively establish that Barker was primarily responsible for the decision.

26.  Because Barker's discriminatory animus is the gravamen of Parris's claim, for Wyndham to be entitled to the "same actor" inference, Barker must have been responsible for Parris's promotion.[5]  Barker was only appointed to his senior role shortly before Parris was promoted, and both Barker's and Parris's promotions were announced to the team at the same time.  <u>See</u> Email from Michael Turolla, ECF No. 106-8.  It is therefore difficult to determine what, if any, influence Barker may have had so early in his tenure.  Although Parris testified at his deposition that he believed Turolla "spoke with . . . Charles Barker" regarding his promotion, this belief is not evidence establishing Barker's responsibility for promoting Parris.  In fact, the record does not provide the basis for Parris's belief.  Parris Depo. at 147, ECF No. 94-22.  <u>Russell v. Mountain Park Health Ctr. Properties, LLC</u>, 403 F. App'x 195, 196 (9th Cir. 2010) (a defendant must demonstrate that "the individuals responsible for . . . termination were actually responsible for his hiring, rather than simply participants in that process, [to be] entitled for purposes of summary judgment to the 'same-actor' inference of non-discrimination.").  Drawing all reasonable inferences in

---

[5] The parties do not appear to dispute that Barker played a significant role in Parris's demotion.  <u>See</u> <u>Aranda v. Renown S. Meadows Med. Ctr.</u>, 11-16894, 2013 WL 3889487 (9th Cir. July 30, 2013) (noting that a plaintiff may establish liability by showing that a supervisor whose animus affected the employment decision only "influenced or participated in the decisionmaking process")(internal quotation omitted).

Parris's favor, the court cannot determine that the same actor inference applies and leaves that matter for trial.

If Wyndham shows at trial that Barker was responsible for both Parris's promotion and demotion, Parris may only prevail if he makes the "extraordinarily strong showing of discrimination" required to rebut the "same actor" inference. Coghlan, 413 F.3d at 1097.

### 4. Good Cause Defense

Wyndham argues that "even if [Parris] creates a fact issue about whether he would have been demoted 'but for' his age," Wyndham is entitled to summary judgment because of its "good cause defense." Reply Memorandum at 9. Wyndham correctly notes that 29 U.S.C. § 623(f)(3) and Haw. Rev. Stat § 378-3 provide an employer with an affirmative defense if the employer discharged or otherwise disciplined an employee for good cause. 29 U.S.C. § 623(f)(3). Wyndham appears to think that even an employer acting with discriminatory animus is protected from liability under the ADEA if the employer can point to some hypothetical "good cause" for the decision. But if a decision is motivated by discriminatory animus, it cannot, by definition, have been for "good cause." See, e.g., Phipps v. Gary Drilling Co., Inc., 722 F. Supp. 615, 620 (E.D. Cal. 1989) ("So long as the employer's decision was made in the exercise of good faith business judgment, and for a reason other than the

*plaintiff's age*, the statutory defense is established.") (emphasis added).

In any event, because the "good cause" defense is an affirmative defense, "the employer bears the burden of proof." Criswell v. W. Airlines, Inc., 709 F.2d 544, 552 (9th Cir. 1983). To prevail on this ground as the moving party, Wyndham must show that reasonable jurors would find by a preponderance of the evidence that Wyndham had good cause to demote Parris.  Given the dispute as to whether there was good cause to demote Parris, Wyndham fails to establish entitlement to prevail on its affirmative defense on the present record.

### B.   Hostile Work Environment Claims

"In order to prevail on [a] hostile work environment claim, [a plaintiff] must show that her workplace [was] permeated with discriminatory intimidation . . . that [was] sufficiently severe or pervasive to alter the conditions of [their] employment and create an abusive working environment."  Brooks v. City of San Mateo, 229 F.3d 917, 923 (9th Cir. 2000) (internal quotation omitted).  "[T]he required level of severity or seriousness varies inversely with the pervasiveness or frequency of the conduct." Nichols v. Azteca Rest. Enterprises, Inc., 256 F.3d 864, 872 (9th Cir. 2001).

Even assuming Parris's hostile work environment claims are properly before this court notwithstanding the absence in the

Complaint of specific allegations of a hostile work environment, not to mention his deposition statements suggesting otherwise (Parris Depo. at 346-350, ECF No. 94-23), this court does not identify sufficient evidence from which a jury could reasonably find that Parris was subjected to a hostile work environment. While the statements by Henao, Ahuvia, and Brown all help to establish that Barker, assuming he made the alleged comments, may have been acting with discriminatory animus in his demotion decision, the witnesses' observations do not, without more, describe the work environment that Parris himself experienced. Fuller v. City of Oakland, Cal., 47 F.3d 1522, 1527 (9th Cir. 1995) ("The working environment must both subjectively and objectively be perceived as abusive.").

Parris does not allege that he heard, even second-hand, any of the discriminatory statements allegedly made by Barker to other employees.  Instead, the only discriminatory statements Parris mentions in either his declaration or deposition are (1) Barker's alleged statement that Parris was "lucky to have [his] job at [his] age" and (2) Turolla's alleged references to Parris as an "old timer."  These relatively infrequent incidents fall far short of the evidence Parris must provide that his workplace was "permeated with discriminatory intimidation."  See, e.g., Vasquez v. Cnty. of Los Angeles, 349 F.3d 634, 644 (9th Cir. 2003) ("Two

28

isolated offensive remarks . . . [are] not severe or pervasive enough to create a hostile work environment.").

Parris's co-worker, Jose Henao, says Barker made comments to both him and Parris about their age, but Parris himself never complains about those particular comments.  The court cannot determine whether Parris even heard those alleged comments.

While Parris details several instances in which he was allegedly harassed or mistreated by Barker, he does not provide evidence from which a jury could tell that these were incidents of "discriminatory intimidation" rather than just bad treatment.[6] See, e.g., Best v. Cal. Dep't of Corr., 21 F. App'x 553, 556 (9th Cir. 2001) (dismissing hostile work environment claim because,

---

[6] At the hearing on the motion for summary judgment, Parris relied on a statement in an email to Kent Keoppel, sent after an argument with Barker.  ECF No. 106-31.  In the email, Parris describes some of Barker's allegedly harassing behavior and appears to link Barker's behavior to Parris's age, stating, "It is well known that [Barker] has younger people he is attempting to move up into management and would like to replace a couple of us older managers."  Parris provides no actual evidence that Barker's alleged desire was indeed "well known."  Parris's conclusion that his argument with Barker was related to age is unsupported by anything Barker is alleged to have said during the encounter.  The words Parris attributes to Barker, while arguably offensive, appear to have nothing to do with age.  "We consider not only the feelings of the actual victim, but also assume the perspective of the reasonable victim."  E.E.O.C. v. Prospect Airport Servs., Inc., 621 F.3d 991, 999 (9th Cir. 2010).  A reasonable victim would have no cause to believe Barker's actions were motivated by age just because of the described behavior, both because Barker made no age-related comment during the argument, and because Parris claims to have heard only one previous discriminatory remark in *any* previous conversation with Barker.

although plaintiff "cites numerous incidents of perceived mistreatment, she provides no evidence in support of her contention that this alleged mistreatment was based on [her being in a protected category]").

Finally, Parris argues that this is "a compelling case of res judicata/collateral estoppel" because this court has "already found that Defendant's workplace was a hostile work environment in Henao v. Wyndham." Plaintiff's Opp. at 23. This court has made no such finding. In Henao, this court found only that "the evidence [was] sufficient to create a question of fact as to whether a hostile work environment was created based on age." Henao v. Wyndham Vacations Resorts, Inc., 927 F. Supp. 2d 978, 990 (D. Haw. 2013). An offensive use of collateral estoppel is possible only when "there is a final and valid decision on the merits." Am. Family Mut. Ins. Co. v. Clancy, 512 F. App'x 674, 676 (9th Cir. 2013). No such decision was reached in Henao. Moreover, in that case, the plaintiff alleged that derogatory remarks and slurs were made to him "many times." Henao, 927 F. Supp. at 990. Equivalent evidence that Parris heard such comments "many times" has not been introduced in this case.

The court stresses that it is not here weighing the offensiveness of the alleged comments or determining their precise frequency. The court is instead concluding that Parris fails to meet his burden of showing that there is a triable issue as to

30

whether the work environment was permeated with discriminatory intimidation.

**V.        CONCLUSION.**

Parris has abandoned Count I (Title VII) and Count IV (Intentional Infliction of Emotional Distress).  Wyndham's motion for summary judgment is denied with respect to Parris's disparate treatment claims under 29 U.S.C. § 623 and Haw. Rev. Stat § 378-2 (Counts II and III), but granted with respect to Parris's hostile work environment claims under those statues.


IT IS SO ORDERED.

DATED: Honolulu, Hawaii, October 18, 2013.



/s/ Susan Oki Mollway
Susan Oki Mollway
Chief United States District Judge